In re Marley Andrew
**MENCER, Debtor.**

**Mary Elizabeth MENCER, Plaintiff,**

v.

**Marley Andrew MENCER, Defendant.**

**No. LR 84–865M.**

**Adv. No. AP 84–493M.**

United States Bankruptcy Court,
E.D. Arkansas, W.D.

May 6, 1985.

William Kirby Mouser, Baim, Gunti, Mouser, Bryant & DeSimone, Pine Bluff, Ark., for plaintiff.

Susan Gunter, Mitchell, Williams, Selig, Jackson & Tucker, Little Rock, Ark., for defendant.

## ORDER

JAMES G. MIXON, Bankruptcy Judge.

Marley Mencer filed a petition for relief under the provisions of Chapter 7 on July 5, 1984. On November 2, 1984, Mary Elizabeth Mencer, debtor's former wife, filed a complaint objecting to the dischargeability of a $30,000.00 debt which arose out of a divorce decree which incorporated a "marital settlement agreement." The issue is whether the debtor's obligation to his ex-wife is excepted from discharge under 11 U.S.C. § 523(a)(5) which provides:

A discharge under section 727, 1141 or 1328(b) of this title does *not* discharge an individual debtor from any debt

(5) to a spouse, former spouse, or child of the debtor for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or

otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act or other such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the. nature of alimony, maintenance, or support;

Marley A. Mencer and Mary Elizabeth Mencer were married in 1966 and from this marriage three children were born. The parties were divorced in May of 1982 by the Chancery Court of Chicot County, Arkansas. The children at that time were ages 14, 12, and 10. Mary Elizabeth was awarded custody of the three children although the testimony indicated that one of the children now resides with Marley by mutual agreement. Mary Elizabeth testified that during the marriage she was a housewife. She further stated that she performed the duties of a housewife, mother and farm hand. She said she drove tractors and helped her husband with his occupation as a farmer. The parties, at the time of the divorce, did not own a homestead, but resided in a home owned by Marley's mother. During the negotiations leading up to the entry of the divorce decree, Marley discharged his attorney. The "marital settlement agreement" and divorce decree were both prepared by Mary Elizabeth's attorney, who is different counsel from her present counsel.

The decree provided under a general heading number one as follows:

That in settlement of the interest of Mary Elizabeth in the marital property she shall receive the following: . . .

D. The sum of $31,000.00, to be paid $6,000.00 on or before July 10, 1983, and the balance on or before expiration of 18 months from the entry of a decree divorcing the parties, (divorce decree), any amount of such obligation not paid when due to bear interest from date hereof at the rate of 10% per annum until paid and amounts due hereunder shall be further evidenced by the promissory note of Andy payable to Mary Elizabeth.

Under general heading number 7, the settlement provides:

It is agreed that Mary Elizabeth and the children shall be entitled to remain in the present residence of the parties until full performance by Andy of the obligations for payments to her as provided in paragraph 1D above in this Agreement. Upon final payment of these amounts Mary Elizabeth agrees that she will find suitable housing for herself and the children. During such time as she continues to remain in the present housing, Andy will assure to her by agreement of his mother, brothers and sister that she can live in the house rent free with water and sewerage service to the property maintained and available without cost to her. At such time as final payment has been made to her as provided then her right to continued use and occupancy shall terminate.

The testimony was that Mary Elizabeth, some time after the entry of the divorce decree, reached a compromise settlement with the debtor's mother. The settlement provided that the debtor's mother pay Mary Elizabeth $20,000.00 of the $30,-000.00 debt and that Mary Elizabeth and the children move out of the house. Presumably the debtor's mother under general principles of subrogation holds a claim for $20,000.00 which is sought to be discharged by the debtor. Mary Elizabeth had little outside work experience prior to the divorce and now works at a bank in McGehee, Arkansas, as a teller. Marley moved to Little Rock, Arkansas, remarried and works as a paramedic. Both parties are acting in good faith and are credible witnesses. The facts present a difficult question of law.

## CONCLUSIONS OF LAW

The question of whether payments under a divorce decree are in the nature of support, alimony or child support is a federal question to be determined by the Bankruptcy Court. *In re Cartner*, 9 B.R.

543, (Bkrtcy.M.D.Ala.1981); *In re Williams*, 703 F.2d 1055 (8th Cir.1983); H.R. Rep. No. 595, 95th Cong. 2nd Sess. 364, reprinted in 1978 U.S.Code Cong. & Admin. News 5787, 5963, 6320; S.Rep. No. 989, 95th Cong., 2nd Sess. 79, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5868.

■ The Bankruptcy Court is not bound by a state court's prior determination of an award as support or a property settlement. *In re Williams*, 703 F.2d at 1056; *In re Lineberry*, 9 B.R. 700 (Bkrtcy. W.D.Mo., C.D.1981); *Matter of Hughes*, 16 B.R. 90 (Bkrtcy.N.D.Ala., S.D.1981); *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). The Bankruptcy Court may look behind a divorce decree to determine the real nature of liabilities regardless how the decree characterizes them. 3 Collier on Bankruptcy, ¶ 523.15(1) (15th Ed.1980); *In re Nelson*, 16 B.R. 658 (Bkrtcy.M.D.Tenn.1981); *In re Vickers*, 24 B.R. 112, 7 C.B.C. 849 (1982); *In re Carrigg*, 14 B.R. 658, 5 C.B.C. 446 (Bkrtcy.D.S.C.1981). The rationale for this rule is to promote the congressional intent to have questions of dischargeability determined by the Bankruptcy Court rather than state court in order to develop appropriate federal standards. *In re Carrigg*, 14 B.R. 658, 5 C.B.C. at 449; *In re Netherton*, 2 B.R. 50 (Bkrtcy.M.D.Tenn.1979). Section 523 was written to overrule prior decisions that deferred to state law any question of whether a debt is alimony, maintenance or support. 3 Collier on Bankruptcy, ¶ 523.15 (15th Ed.); *Compare In re Waller*, 494 F.2d 447 (6th Cir.1974) *with Fife v. Fife*, 1 Utah 2d 281, 265 P.2d 642 (1952). Often property settlements which are incorporated in divorce decrees are drafted and liabilities characterized for tax or other considerations not connected with bankruptcy. *In re Warner*, 5 B.R. 434 (Bkrtcy.D.Utah C.D. 1980); *In re Carrigg*, 14 B.R. 658, 5 C.B.C. at 450, *In re Nelson*, 16 B.R. 658 (Bkrtcy. M.D.Tenn.1981). While obligations for alimony, support and child support are not dischargeable in bankruptcy, obligations which are in the nature of a property settlement are dischargeable. *In re Brown*, 7 B.R. 268 (Bkrtcy.W.D.N.Y.1980); *In re Nelson*, 16 B.R. 658 (Bkrtcy.M.D.Tenn. 1981); *In re Demkow*, 8 B.R. 554 (Bkrtcy. N.D.Ohio, E.D.1981). The debtor's right to a fresh start must give way to Congress' expressed intent that the debtor's obligations and agreement to support his former spouse or children remain inviolate. *Boyle v. Donovan*, 724 F.2d 681 (8th Cir. 1984).

■ The Court views the debtor's obligations here to be a promise to provide his former spouse with a means to provide a home for herself and the children. This intent is clearly expressed in the settlement agreement and is corroborated by the testimony.

The debtor and his spouse were married for 16 years. By mutual agreement, Mary Elizabeth Mencer worked to help the debtor to farm, to raise their children and to perform the many other duties of a housewife. As a result, her ability to support herself and the parties' children after the divorce has been diminished. This was apparently recognized by the debtor who agreed to provide her a means to insure her of having a suitable home. Although there is authority to the contrary, the better reasoned cases which have considered this question have held obligations, whether payable directly to a former spouse or to a third party, that are payments for a home for the former spouse or children are in the nature of support and are nondischargeable. *In re Maitlen*, 658 F.2d 466 (7th Cir.1981); *Matter of Hughes*, 16 B.R. 90 (Bkrtcy.N.D.Ala., S.D.1981); *In re Henry*, 5 B.R. 342 (Bkrtcy.M.D.Fla.1980). *Contra In re Brown*, 7 B.R. 268 (Bkrtcy.W.D.N.Y. 1980); *In re Nelson*, 16 B.R. 658 (Bkrtcy. M.D.Tenn.1981); *In re Demkow*, 8 B.R. 554 (Bkrtcy.N.D.Ohio, E.D.1981); *In re Ingram*, 5 B.R. 232 (N.D.Ga., Rome D.1980).

The Court concludes that the obligation of Marley Mencer to pay to Mary Elizabeth Mencer the sum of $31,000.00 is in the nature of support and is determined to be nondischargeable pursuant to the provisions of 11 U.S.C. § 523(a)(5).

IT IS SO ORDERED.