**In re Bobby and Mildred JARRETT.**

**Bobby JARRETT, Plaintiff,**

v.

**Ivory WRIGHT, Defendant.**

**Bankruptcy No. 92–50292.
Adv. No. 95–5007.**

United States Bankruptcy Court,
E.D. Arkansas,
Pine Bluff Division.

May 16, 1995.

David Gunti, Pine Bluff, AR, for debtor.

Charles Doerpinghaus, Benton, AR, for defendant.

David D. Coop, Chapter 13 Trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

MARY D. SCOTT, Bankruptcy Judge.

This case presents the oft-seen situation in which the parties, formerly married to each other, dispute whether certain payments under a property settlement agreement are dischargeable in bankruptcy. The facts of this case are particularly difficult to determine because neither party presented a demeanor consistent with truthfulness. The testimony of the parties conflicted in every major and minor respect and the Court does not believe that either party was truthful in every respect. The ex-spouse of the debtor, Ivory Jarrett Wright ("Wright"), asserts that payments in the amount of $400 per month, for a four-year term are in the nature of support. The debtor asserts that the payments were in exchange for Wright's interest in their marital residence such that the payments are dischargeable in bankruptcy.

The parties married in 1973 and divorced nearly twenty years later, in early 1992. There were no children of the marriage. Although the former wife, Ivory Jarrett Wright ("Wright"), claims that the parties separated in August 1991, the Court believes the testimony of the debtor Jarrett that Wright

moved from the family residence in early 1991, following the debtor's return home after open heart surgery. After the parties separated, Jarrett advised Wright that he would assist her in living expenses until such time as she obtained employment. Although Wright claims she did not begin working until June 1991, the Court believes the debtor's testimony that Wright actually found employment at an earlier date and that any voluntary payments in the nature of Wright's support terminated prior to February 1992. In September 1991, Wright filed her complaint for divorce. The settlement agreement and divorce decree were filed on February 28, 1992.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 1334. Moreover, this Court concludes that this is a "core proceeding" within the meaning of 28 U.S.C. § 157(b) as exemplified by 28 U.S.C. § 157(b)(2)(I).

■ Under the Bankruptcy Code, debts in the nature of support are not dischargeable in bankruptcy. 11 U.S.C. § 523(a)(5). In determining whether the obligations are in the nature of support or property settlement, the Court focuses upon the facts and circumstances at the time of the divorce; the current needs of the parties are not relevant to the determination. *Draper v. Draper*, 790 F.2d 52, 54 & n. 3 (8th Cir.1986). It is the intent of the parties at the time of the agreement that is determinative of whether the payments are in the nature of support or are a division of property.

■ In *Ramey v. Ramey (In re Ramey)*, 59 B.R. 527, 530 (Bankr.E.D.Ark.1986), the court outlined a nonexclusive list of factors courts may consider in this question. Each of these factors support a determination that the disputed payments are in the nature of a property settlement, and thus, are dischargeable in bankruptcy:

(1) Whether the obligation terminates on the death or remarriage of either spouse. Under the parties' agreement, there is no provision for the obligation to terminate. The debtor is obligated whether or not Wright remarries, supporting an inference that the parties intended the payments to be property settlement rather than alimony.[1]

(2) The contextual placement of the debt, the characterization of the debt, and the payment actually made at the time of the agreement indicate the payments are property settlement. Taking into account the described payments, the property settlement agreement sets forth an equal division of marital property. The $400 monthly payments are characterized as being in exchange for Wright's interest in the marital residence and ten acres surrounding the home. In conjunction with this agreement, Jarrett executed a promissory note and mortgage to Wright to secure her interest in the property.[2] The agreement further provided that Jarrett could pay the debt in full without penalty at any time. The promissory note provided that should Jarrett default on any one payment, the entire debt would become immediately due and payable, a term contradictory to any inference that the debt was in the nature of support.

The agreement provided for payment of $4,000 to Wright for her interest in Jarrett's sole proprietorship, a backhoe operation. The testimony indicated that this $4,000 was paid at or near the time of the settlement agreement. Personal property of the parties was divided by the Court. There were no provisions regarding support. There was no other property to be divided between the parties. Accordingly, the terms of the agreement and the nature of the rights described in the documents support the inference that the parties intended the agreement to be

---

1. Were the payments in the nature of alimony, her right to the payments, which did not begin until March 15, 1992, would have terminated in August 1992 when she remarried. Ark.Code Annot. § 9–12–312(a). Thus, if the payments are alimony, Wright only has a $2,000 claim in this bankruptcy.

2. Wright no longer has a secured claim in this bankruptcy because the debtor surrendered the property. Presumably, Wright will be paid her share of the proceeds once the bank sells the property. In light of the parties' testimony regarding the value, this is likely to be in excess of the amount she would receive if the debt is in the nature of support. *See* n. 1, *supra*.

property settlement. No alimony was intended.

(3) It does not appear that the payments were meant to balance disparate income. There was no evidence regarding Jarrett's income at the time of the divorce. However, inasmuch as he had undergone open heart surgery in the month prior to separation and the business appears to have declined, it does not appear that he was making substantial sums of money. Further, the debtor's education level is below that of Wright. She apparently has obtained increasingly better jobs without difficulty, while Jarrett would have trouble obtaining any employment other than manual labor. The Court concludes from the testimony and conduct of the parties, that, at the time of the divorce, Wright had greater employment opportunities before her, was sharing expenses with another such that support from Jarrett was not necessary. Indeed, given his disability, Wright could possibly have been required to defend against a request for support in favor of Jarrett.

(4) The payments are to be made directly to the spouse.

(5) Whether the obligation is payable in a lump sum or in installments over a period of time. While the payments are generally payable over time, Jarrett had the option of paying in a lump sum. Moreover, the contractual nature of the promissory note indicates the obligation to be in the nature of property settlement.

(6) The Court believes, judging the demeanor and testimony of the parties, that they intended to create a division of property, not an obligation of support. While Wright testified that it was intended by both of them for the payments to be alimony, neither her demeanor nor conduct support this assertion. Throughout this bankruptcy proceeding, the claim has merely been characterized as a secured claim, and, in the confirmed plan, and all modified plans, treated as a secured claim. Had Wright truly believed the debt to be in the nature of support, she should have objected to her treatment under the plan. Indeed, the fact that she did not object to the amended plan which surrendered the property and left her with no share of a distribution is virtually conclusive as to her understanding of the nature of the debt. The modification left her with a general unsecured claim for which she would be paid nothing. If she desired payment in the nature of support, she was required to object to his plan in order to maintain her payments.[3] *See* 11 U.S.C. § 1327 ("The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."). The fact that she waited until January 30, 1995, two and one-half years after the case was filed, and over two years after her rights were modified by the second confirmed plan to pursue payment, contradicts her assertion. Further, the Court believes Jarrett's testimony that he never intended to pay alimony. Inasmuch as Wright had rented a trailer with another man prior to the time she filed for divorce, this is the much more credible statement. It is not credible that Jarrett would volunteer to pay alimony for a period of five years at a time when his wife was living with another man, and, apparently, contemplating remarriage.

(7) Although Wright asserts that the payments were necessary to insure that her daily needs were met, the evidence fails to support this. At the time of the divorce she was already living with her future husband, had a job, had better employment opportunities, and was in fact meeting her needs herself.

The Court finds that these factors support the conclusion that the debt incurred in the marital settlement agreement, the decree, and the promissory note were intended by both parties to the agreement to be a division of the parties' property and, thus, were not in the nature of Wright's support. Accordingly, it is

---

3. Of course, were the payments in the nature of support, the debt would not be discharged. However, since the plan provided for no payments, she would have to wait until the conclusion of the bankruptcy case, five years later, to collect the debt.

**ORDERED** that the debt owed by the debtor BOBBY JARRETT to IVORY WRIGHT is dischargeable in this bankruptcy case such that judgment will be entered in favor of the debtor plaintiff.

**IT IS SO ORDERED.**

### *JUDGMENT*

This action came on for trial before the Court, Honorable Mary Davies Scott, U.S. Bankruptcy Judge, presiding, and the issues having been duly tried and a decision having been duly rendered,

**It is Ordered and Adjudged** that the debt owed by the debtor BOBBY JARRETT to IVORY WRIGHT is dischargeable in this bankruptcy case pursuant to 11 U.S.C. § 727.

**IT IS SO ORDERED.**